IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Vito Dragone, Jr., and Laurence A. Wolfe, Jr., Designated Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund, | ) | Civil Action No. 2:22-cv-1703 |
| Plaintiff, | ) | |
| vs. | ) | |
| Laurel Foodsystems, Inc., | ) | ELECTRONICALLY FILED |
| Defendant. | ) | |

**COMPLAINT**

Plaintiffs, Vito Dragone, Jr., and Laurence A. Wolfe, Jr., Designated Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund (the "Trustees"), by their undersigned counsel, file the within Complaint against Laurel Foodsystems. Inc., of which the following is a statement:

1. This is an action under Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145, to collect delinquent contributions owed to the Pension Fund by the Defendant and to compel Defendant's compliance with its contribution obligations going forward.

**PARTIES**

2. Plaintiffs are the Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund (the "Pension Fund").

3. The Pension Fund is a multiemployer plan, as that term is defined by Section 4001(a)(3) of the MPPAA, 29 U.S.C. §1301(a)(3), which provides pension benefits to employees of various participating employers.

4. The Trustees are the administrators and the plan sponsors of the Pension Fund. The Trustees are also the Pension Fund's fiduciaries as that term is defined by Section 3(21) of ERISA, 29 U.S.C. §1002(21).

5. The Trustees administer the Pension Fund from an office located in Uniontown, Fayette County, Pennsylvania.

6. Upon information and belief, the Defendant, Laurel Foodsystems, Inc. ("Laurel"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business at 4590 Campbells Run Road, Pittsburgh, Allegheny County, Pennsylvania, 15205.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this civil action pursuant to 29 U.S.C. § 1132 (e)(1), which grants the district courts of the United States exclusive jurisdiction over all civil actions brought under ERISA.

8. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2), which provides that a civil action under ERISA may be brought in the district where the plan is administered, where the breach took place or where the defendant resides.

## FACTUAL BACKGROUND

9. On or about July 1, 2018, Laurel entered into a collective bargaining agreement with the Chauffeurs, Teamsters and Helpers Local Union 491 (the "Union") of Uniontown,

Pennsylvania (the "CBA"). A true and correct copy of the CBA is attached hereto as Exhibit 1 and is incorporated herein as if fully set forth at length.

10. The Union and Laurel agreed that the term of the CBA would commence on July 1, 2018 and would expire on June 30, 2023. See CBA, Ex. 1, p. 22, Art. XXIV.

11. The CBA provides that all employees of Laurel who are members of the Union on the effective date of the CBA shall remain members in good standing as a condition of their employment and that all employees who are not members of the Union and all new hires shall, as a condition of employment, become members in good standing of the Union within 90 days after the beginning of their employment. Ex. 1, CBA, p. 2, Art. I, ¶ B.

12. Pursuant to Article XVIII of the CBA, Laurel has the right to hire two seasonal employees to work from April 1 through Labor Day. Ex. 1, CBA, p. 19, Art. XVIII.

13. The CBA further provides that if any seasonal employee remains employed after August 31, they become "new hires," and begin to accumulate seniority. Ex. 1, CBA, p. 19, Art. XVIII.

14. The CBA required Laurel to make to following contributions to the Pension Fund:

a. For the period July 1, 2018, through June 30, 2019, Laurel was required to contribute $368.69 per month per employee;

b. For the period July 1, 2019, through June 30, 2020, Laurel was required to contribute $398.16 per month per employee;

c. For the period July 1, 2020, through June 30, 2021, Laurel was required to contribute $430.03 per month per employee;

d. For the period July 1, 2021, through June 30, 2022, Laurel was required to contribute $464.43 per month per employee;

e. For the period July 1, 2022, through June 30, 2023, Laurel was required to contribute $501.58 per month per employee.

See Ex. 2, CBA, pp. 19-20, Art. XIX, ¶ C.

15. The CBA requires that all contributions to the Pension Fund are to be made on or before the 10th day of the month immediately following the month worked. See Ex. 1, CBA, p. 20, Art. XIX, ¶ D.

16. Laurel failed to make all the required contributions to the Pension Fund when due.

17. On or about May 15, 2018, Laurel hired Michael Rohrbacher as a "seasonal employee."

18. Mr. Rohrbacher has worked for Laurel continuously since that time.

19. Because Mr. Rohrbacher was hired as a seasonal employee, Laurel was not initially obligated to make contributions to the Pension Fund. However, because Mr. Rohrbacher continued to work for Laurel after August 31, 2018, under the CBA, Laurel became obligated to contribute to the Pension Plan on his behalf beginning in September of 2018.

20. Laurel failed to make contributions to the Pension Fund on Mr. Rohrbacher's behalf.

21. On or about March 11, 2019, Laurel hired Dylan Bollman as a "seasonal employee."

22. Mr. Bollman has worked for Laurel continuously since that time.

23. Because Mr. Bollman was hired as a seasonal employee, Laurel was not initially obligated to make contributions to the Pension Fund. However, because Mr. Bollman continued to work for Laurel after August 31, 2019, under the CBA, Laurel became obligated to contribute to the Pension Fund on his behalf in September of 2019.

24. Laurel failed to make contributions to the Pension Fund on Mr. Bolman's behalf.

25. Recently, the Union had an audit performed of Laurel's contributions to the Pension Fund for the period 2018 through 2020.

26. Based on the Audit, the Trustees determined that Laurel failed to make all required contributions to the Pension Fund.

27. More specifically, during the audit period of 2018 through 2020, Laurel failed to make $17,648.19 in contributions that it owed to the Pension Fund under the CBA.

28. Since the audit period, i.e. during 2021and 2022, Laurel has failed to make an additional $18,350.15 in contributions owed to the Pension Fund.

29. As of November 30, 2022, the total unpaid contributions owed to the Pension Fund by Laurel is $35,998.34. This amount will increase as additional contributions due are unpaid.

30. Under 29 U.S.C. § 1132(g)(2), in an action by a fiduciary to recover unpaid contributions, this Court shall award:

a. The unpaid contributions;

b. Interest on the unpaid contributions;

c. An additional amount equal to the greater of the interest on the unpaid contributions or the liquidated damages provided for in the plan; and

d. Reasonable attorney's fees and costs of the action.

31. The Pension Fund's Trust Agreement provides for interest on unpaid contributions at a rate of 1.5% per month and liquidated damages equal to $50 or 10% of the delinquent contributions, whichever is greater. An excerpt of the Trust Agreement is attached hereto as Exhibit 2 and is incorporated herein as if fully set forth at length.

32. As of November 30, 2022, the total unpaid contributions owed to the Pension Fund by Laurel, plus interest and liquidated damages is $60,633.54. An accounting of Laurel's unpaid contributions, interest and liquidated damages is attached hereto as Exhibit 3 and is incorporated herein as if fully set forth at length.

**COUNT I – RECOVERY OF UNPAID CONTRIBUTIONS**

33. The Trustees incorporate Paragraphs 1 through 32, inclusive of this Complaint as if the same were fully set forth at length herein.

34. Section 515 of ERISA, 29 U.S.C. § 1145, creates a federal right of action to collect delinquent pension contributions that is independent of the contract on which duty to make pension contributions is based.

35. As alleged herein, Laurel failed to make all promised contributions to the Pension Fund.

36. As of November 30, 2022, the amount of unpaid contributions, plus interest and liquidated damages is $60,633.54.

37. This amount is increasing as additional payments are missed and additional interest and liquidated damages accrue.

WHEREFORE, Plaintiffs, Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund demand judgment in their favor and

against the Defendant, Laurel Foodsystems, Inc., in the amount of $60,633.54, plus additional unpaid contributions, interest and liquidated damages that continue to accrue, plus its reasonable attorneys' fees and costs.

## COUNT II – INJUNCTIVE RELIEF

38. The Trustees incorporate Paragraphs 1 through 37, inclusive of this Complaint as if the same were fully set forth at length herein.

39. Under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), this court may grant the Pension Fund equitable relief to enforce the terms of the Plan.

40. In January of 2022, the Trustees notified Laurel that it had underpaid its contributions to the Pension Fund.

41. In July of 2022, counsel for the Trustees made a second demand to Laurel for payment of the delinquent Pension Fund contributions. A copy of counsel's letter is attached as Exhibit 4 and is incorporated herein as if fully set forth at length.

42. Laurel has refused to comply fully with its obligations to make contributions to the Pension Fund.

43. Because of Laurel's continued refusal to comply with its obligations under the CBA to make contributions to the Pension Fund, the Trustees have no adequate remedy at law and unless Laurel is enjoined from continuing to breach the CBA, the Pension Fund will be irreparably harmed.

WHEREFORE, Plaintiffs, Trustees of the Southwestern Pennsylvania and Western Maryland Area Teamsters and Employers Pension Fund demand a mandatory injunction in their

favor directing the Defendant, Laurel Foodsystems, Inc., to comply with the pension contribution provisions of the CBA.

MEYER, UNKOVIC & SCOTT LLP

By: *s/ Andrew L. Noble*

Andrew L. Noble
PA I.D. #90874
aln@muslaw.com

Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315
(412) 456-2800
(412) 456-2864/Fax

ATTORNEYS FOR PLAINTIFFS